SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

MAY 23 2014

ARTHUR JOHNSTON
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
~~GULFPORT~~ DIVISION
*Southern*

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:14cv224 LG-JMR |
| | ) |
| DAWN PROPERTIES, INC., | ) |
| SOUTHERN CROSS CONSTRUCTION | ) |
| COMPANY, INC., | ) |
| RIDGELAND CONSTRUCTION ONE, LLC, | ) |
| THE BEACH CLUB, LLC, | ) |
| THE BEACH CLUB II, LLC, | ) |
| THE BELMONT OF LAMAR, LLC, | ) |
| GRAND BISCAYNE APTS., LLC, and | ) |
| SEAINN, LLC, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| SUMMER MISS, LLC, | ) |
| 14510 LEMOYNE BOULEVARD, LLC, | ) |
| LEXINGTON MILL MISSISSIPPI OWNER, LLC, | ) |
| and INN BY THE SEA HOME OWNERS | ) |
| ASSOCIATION, INC., | ) |
| | ) |
| Rule 19 Defendants. | ) |

**COMPLAINT**

The United States of America alleges:

1. This action is brought by the United States to enforce the Fair Housing Act, as

amended, 42 U.S.C. §§ 3601-3619, and Title III of the Americans with Disabilities Act of 1990

(hereinafter, the "ADA"), 42 U.S.C. §§ 12181-12213, and its implementing regulation, the ADA

Standards for Accessible Design, 28 C.F.R. § 36.104; 28 C.F.R. Pt. 36 Appendix A (1991 ADA

Standards for Accessible Design), as amended at 28 C.F.R. Pt. 36 Appendix D (2010 ADA

Standards for Accessible Design) (hereinafter, the "ADA Standards"). This action is brought pursuant to Section 814(a) of the Fair Housing Act, 42 U.S.C. § 3614(a), and Section 308(a) of the ADA, 42 U.S.C. § 12188. Defendants -- the owners, developers, and builders of numerous residential apartment complexes -- have unlawfully discriminated against persons with disabilities under the Fair Housing Act and the ADA by failing to design and construct covered multifamily dwellings and associated places of public accommodation so as to be accessible to persons with disabilities.

## Jurisdiction and Venue

2. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B).

3. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged in this action occurred in this judicial district.

## Subject Properties

4. The Lexington is an apartment complex located at 879 Williams Boulevard in Ridgeland, Mississippi. It consists of 27 two-story buildings, none of which has an elevator. There are 216 apartment units, 108 of which are ground-floor units. The property has public and common use areas, including a clubhouse/leasing office, a mail facility, dumpsters, a picnic area, and a fenced-in open space that includes a pet litter area.

5. The Beach Club is an apartment complex located at 2012 West 2nd Street in Long Beach, Mississippi. It consists of 15 three-story and five two-story buildings, none of which has an elevator. There are 220 apartment units, 80 of which are ground-floor units. The property has

public and common use areas, including a clubhouse/leasing office, a swimming pool, a mail facility, dumpsters, a playground, and a picnic area.

6. The Belmont (Hattiesburg) is an apartment complex located at 127 98th Place Boulevard in Hattiesburg, Mississippi. It consists of 11 three-story buildings and four two-story buildings, none of which has an elevator. There are 164 apartment units, 60 of which are ground-floor units. The property has public and common use areas, including a leasing office/clubhouse, a swimming pool, a mail facility, dumpsters, a playground, a gazebo, a pet play area, and a separate pet litter area.

7. Grand Biscayne is an apartment complex located at 14510 Lemoyne Boulevard in Biloxi, Mississippi. It consists of 21 three-story buildings and eight two-story buildings, none of which has an elevator. There are 316 apartment units, 116 of which are ground-floor units. The property has public and common use areas, including a clubhouse/leasing office, a swimming pool, a mail facility, dumpsters, a playground, and a gazebo.

8. Inn by the Sea is a condominium complex located at 900 Village Lane in Pass Christian, Mississippi. It consists of a single five-story building with at least one elevator serving all floors. The property has public and common use areas, including a swimming pool, a meeting facility, a fitness center, and a mailroom.

<u>**Defendants**</u>

9. Dawn Properties, Inc. ("Dawn") is a Mississippi corporation whose principal place of business is 59 at 98 Place Boulevard in Hattiesburg, Mississippi. According to its website, located at www.dawnpropertiesinc.com, Dawn, through its subsidiary Southern Cross Construction Co., has developed over 3,000 residential units in recent years. Dawn was an owner

and/or developer of The Lexington and participated in the design and construction of the complex.

10. Southern Cross Construction Company, Inc. is a Mississippi corporation whose principal place of business is 59 at 98 Place Boulevard in Hattiesburg, Mississippi. It was the general contractor and/or builder of The Lexington and was an owner and/or developer, and the general contractor and/or builder of Grand Biscayne, and participated in the design and construction of the complexes.

11. Ridgeland Construction One, LLC was a Delaware limited liability company, registered to do business in Mississippi, whose principal place of business was 1 S Ocean Boulevard, Suite 305 in Boca Raton, Florida. It was an owner and/or developer of The Lexington and participated in the design and construction of the complex.

12. The Beach Club, LLC is a Mississippi limited liability company whose principal place of business is 2012 W 2nd Street in Long Beach, Mississippi. It was an owner and/or developer of The Beach Club and participated in the design and construction of the complex.

13. The Beach Club II, LLC is a Mississippi limited liability company whose principal place of business is 2012 W 2nd Street in Long Beach, Mississippi. The Beach Club, LLC sold The Beach Club to The Beach Club II, LLC during the property's design and construction. The Beach Club II, LLC was an owner and/or developer of The Beach Club and participated in the design and construction of the complex. The Beach Club II, LLC is the current owner of The Beach Club.

14. The Belmont of Lamar, LLC was a Mississippi limited liability company whose principal place of business was 6524 US HWY 98 W in Hattiesburg, Mississippi. It was an

4

owner and/or developer of The Belmont (Hattiesburg) and participated in the design and construction of the complex.

15. Grand Biscayne Apts., LLC is a Mississippi limited liability company whose principal place of business is 14512 Lemoyne Boulevard in Biloxi, Mississippi. It was the owner and/or developer of Grand Biscayne and participated in the design and construction of the complex.

16. Seainn, LLC is a Mississippi limited liability company whose principal place of business is 59 at 98 Place Boulevard in Hattiesburg, Mississippi. It was an owner and/or developer of Inn by the Sea and participated in the design and construction of the complex.

### Rule 19 Defendants

17. Summer Miss, LLC is a Mississippi limited liability company whose principal place of business is 701 13th Street in Phenix City, Alabama. It is the current owner of The Belmont (Hattiesburg) and, in that capacity, is named as a necessary party to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

18. 14510 Lemoyne Boulevard, LLC is a Delaware limited liability company whose principal place of business is 14510 Lemoyne Boulevard in Biloxi, Mississippi. It is the current owner of Grand Biscayne and, in that capacity, is named as a necessary party to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

19. Lexington Mill Mississippi Owner, LLC is a Delaware limited liability company, registered to do business in Mississippi, whose principal place of business is 2929 Arch Street, 17th Floor, Cira Centre in Philadelphia, Pennsylvania. It is the current owner of The Lexington

and, in that capacity, is named as a necessary party to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

20. Inn by the Sea Home Owners Association, Inc. is a Mississippi corporation whose principal place of business is 900 Village Lane in Pass Christian, Mississippi. It is the current owner of the common property at Inn by the Sea and, in that capacity, is named as a necessary party to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

### Factual Allegations

21. Dawn's website lists The Lexington, The Beach Club, The Belmont (Hattiesburg), Grand Biscayne, and Inn by the Sea as properties that Dawn has owned and/or developed. Defendants Southern Cross Construction Company, Inc., Ridgeland Construction One, LLC, The Beach Club, LLC, The Beach Club II, LLC, The Belmont of Lamar, LLC, Grand Biscayne, LLC, and Seainn, LLC are all subsidiaries and/or affiliates of Dawn. Dawn's owner and president, Ike W. Thrash, is an owner and is the president of Southern Cross Construction Company, Inc. Mr. Thrash is or was an owner, principal, or member of Defendants Ridgeland Construction One, LLC, The Beach Club, LLC, The Beach Club II, LLC, The Belmont of Lamar, LLC, Grand Biscayne, LLC, and Seainn, LLC.

22. Dawn, directly and/or through its affiliates and/or subsidiaries, has participated in the design and construction of other covered multifamily properties including, but not limited to, The Belmont (Biloxi), located at 14891 Lemoyne Boulevard in Biloxi, Mississippi; Royal Gulf, located at 190 Gateway Drive in Biloxi, Mississippi; and Westover (now called Summer West), located at 216 Westover Drive in Hattiesburg, Mississippi. Dawn's pattern or practice of failing

to design and construct dwellings, public and common-use areas, and associated places of public accommodation in compliance with the Fair Housing Act and the ADA, as alleged herein, may extend to these other multifamily properties and, absent injunctive relief, to other multifamily properties that are currently being designed and constructed.

**Fair Housing Act Allegations**

23. The properties described above were designed and constructed for first occupancy after March 13, 1991.

24. The properties described above are "dwellings" and contain "dwellings" within the meaning of 42 U.S.C. § 3602(b).

25. The properties described above contain "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f).

26. The covered multifamily dwellings at the properties described above are subject to the accessibility requirements of 42 U.S.C. § 3604(f).

**The Lexington**

27. The inaccessible features at The Lexington include, but are not limited to:

    a. amenities provided onsite (such as the clubhouse/leasing office, mail facility, dumpsters, and picnic area) have barriers and are not located on an accessible pedestrian route to all ground-floor covered units. For example, many of the amenities have:

        i. no connecting sidewalks or curb-cuts to ground-floor covered units;

        ii. abrupt level changes greater than 1/4";

        iii. excessive slopes that include cross slopes exceeding 2%; and/or

      iv.  running slopes exceeding 5% without ramp features, and/or running slopes on ramps exceeding 8.33%;

b.  designated disabled parking spaces lack proper signage, access aisles, and/or curb ramps;

c.  breezeways leading to covered units do not have cane detection under the stairs and have one or more protruding objects in the form of wall mounted light fixtures;

d.  ground-floor covered units have barriers on the approach walkway leading up to the primary entry door of the unit, including: multiple steps; abrupt level changes greater than 1/4"; and running slopes exceeding 5% without ramp features, and/or running slopes on ramps exceeding 8.33%; and

e.  the primary entry doors to all ground-floor covered units have knob-style hardware rather than the required lever-style hardware.

**The Beach Club**

28. The inaccessible features at The Beach Club include, but are not limited to:

a.  amenities provided onsite (such as the clubhouse/leasing office, swimming pool, mail facility, dumpsters, playground, and picnic area) have barriers and are not located on an accessible pedestrian route to all ground-floor covered units. For example, many of the amenities have:

      i.  no connecting sidewalks or curb-cuts to ground-floor covered units;

     ii.  abrupt level changes greater than 1/4";

        iii.  excessive cross slopes exceeding 2%; and/or

        iv.  excessive running slopes exceeding 5% without ramp features and/or excessive running slopes on ramps exceeding 8.33%;

  b.  designated disabled parking spaces lack proper signage, access aisles, and/or curb ramps;

  c.  breezeways leading to covered units do not have cane detection under the stairs;

  d.  ground-floor covered units have one or more barriers in the approach walkway leading up to the primary entry door of the unit, including, but not limited to, one or more steps, abrupt level changes greater than 1/4" in the approach walk, and one or more protruding objects; and

  e.  the primary entry doors to ground-floor covered units have knob-style hardware rather than the required lever-style hardware.

**The Belmont (Hattiesburg)**

29. The inaccessible features at The Belmont (Hattiesburg) include, but are not limited to:

  a.  amenities provided onsite (such as the clubhouse/leasing office, swimming pool, mail facility, dumpsters, playground, gazebo, and pet play area) have barriers and are not located on an accessible pedestrian route to all ground-floor covered units. For example, many of the amenities have:

        i.  no connecting sidewalks or curb-cuts to ground-floor covered units;

        ii.  abrupt level changes greater than 1/4";

        iii.  excessive slopes that include cross slopes exceeding 2%; and/or

      iv. running slopes exceeding 5% without ramp features, and/or running

         slopes on ramps exceeding 8.33%;

b.  breezeways leading to covered units do not have cane detection under the

    stairs;

c.  ground-floor covered units have barriers on the approach walkway leading up

    to the primary entry door of the unit, including running slopes exceeding 5%

    without ramp features and/or running slopes on ramps exceeding 8.33%, and

    abrupt changes in level at the primary entry door greater than 1/4";

d.  the primary entry doors to ground-floor covered units have knob-style

    hardware rather than the required lever-style hardware; and

e.  interior violations including, but not limited to, passage doors that lack a

    nominal clear opening width of 32", inaccessible light switches at a height

    greater than 48" above the finished floor, and inaccessible bathrooms and

    kitchens lacking sufficient maneuvering clearance.

**Grand Biscayne**

30. The inaccessible features at Grand Biscayne include, but are not limited to:

a.  amenities provided onsite (such as the clubhouse/leasing office, swimming

    pool, mail facility, dumpsters, playground, and gazebo) have barriers and are

    not located on an accessible pedestrian route to all ground-floor covered units.

    For example, many of the amenities have:

      i. no connecting sidewalks or curb-cuts to ground-floor covered units;

      ii. abrupt level changes greater than 1/4":

   iii. excessive slopes that include cross slopes exceeding 2%; and/or

   iv. running slopes exceeding 5% without ramp features, and/or running

    slopes on ramps exceeding 8.33%;

 b. breezeways leading to covered units do not have cane detection under the

   stairs;

 c. ground-floor covered units have barriers on the approach walkway leading up

   to the primary entry door of the unit, including running slopes exceeding 5%

   without ramp features and/or running slopes on ramps exceeding 8.33%;

 d. the primary entry doors to all ground-floor covered units have knob-style

   hardware rather than the required lever-style hardware; and

 e. interior violations including, but not limited to, passage doors that lack a

   nominal clear opening width of 32", inaccessible environmental controls at a

   height greater than 48" above the finished floor, and inaccessible bathrooms

   and kitchens lacking sufficient maneuvering clearance.

**Inn by the Sea**

31. The inaccessible features at Inn by the Sea include, but are not limited to:

 a. the latch and lock of the gate into the swimming pool and barbeque are

   inaccessible and are at a height greater than 48" above the ground, and there is

   insufficient maneuvering clearance space on the pull side of the gate;

 b. the top row of mailboxes is located at a height greater than 54" above the

   finished floor;

11

    c.   the opening of the Home Owners Association drop box is located at a height greater than 54" above the finished floor;

    d.   there is no pedestrian walkway from the building to the public street;

    e.   there are no accessible disabled parking spaces in the garage;

    f.   disabled parking spaces lack proper signage and lack an access aisle. Where there is an existing access aisle, there is no curb-cut; and

    g.   the curb-cuts leading up to the entry gates have running slopes exceeding 8.33%.

**ADA Allegations**

32. The leasing offices at The Lexington, The Beach Club, The Belmont (Hattiesburg), and Grand Biscayne were designed and constructed for first occupancy after January 26, 1993, and are places of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104. These areas, therefore, are required to meet the accessibility requirements of the ADA Standards.

33. The leasing offices at The Lexington, The Beach Club, The Belmont (Hattiesburg), and Grand Biscayne are not designed and constructed so that they are readily accessible to and usable by individuals with disabilities, as required by the ADA, 42 U.S.C. § 12183(a)(1). These leasing offices fail to comply with the ADA Standards.

34. The inaccessible features at The Lexington's leasing office include, but are not limited to:

    a.   the walkway to the leasing office has a cross slope exceeding 2%;

12

    b.  the primary door to the leasing office has knob-style hardware rather than the required lever-style hardware; and

    c.  the disabled parking space in front of the leasing office lacks proper signage, has a curb ramp that encroaches on the access isle, and the parking space and access aisle has a running slope that exceeds 5%, or exceeds 8.33% without ramp features.

35. The inaccessible features at The Beach Club's leasing office include, but are not limited to:

    a.  the walkway to the leasing office does not connect with an accessible route;

    b.  the primary doorway to the leasing office has an abrupt level change greater than 1/4"; and

    c.  designated disabled parking spaces lack proper signage, access aisles, and/or curb ramps.

36. The inaccessible features at The Belmont's (Hattiesburg) leasing office include, but are not limited to:

    a.  the walkway to the leasing office has excessive slopes that include a cross slope exceeding 2%, a running slope exceeding 5% without ramp features, and/or running slopes on ramps exceeding 8.33%;

    b.  the primary doorway to the leasing office has an abrupt level change greater than 1/4";

    c.  the primary door to the leasing office has knob-style hardware rather than the required lever-style hardware; and

13

    d.   the disabled parking space in front of the leasing office has a curb ramp

         encroaching on the access aisle with a cross slope exceeding 2%.

37. The inaccessible features at the Grand Biscayne's leasing office include, but are not limited to:

    a.   the walkway to the leasing office does not connect with an accessible route

       and has one or more protruding objects in the form of wall mounted light

       fixtures;

    b.   the primary doorway to the leasing office has an abrupt level change greater

       than 1/4"; and

    c.   the disabled parking space in front of the leasing office lacks proper signage,

       and there is an abrupt level change greater than 1/4" at the curb-ramp.

## Fair Housing Act Claims

38. The United States re-alleges and incorporates by reference the allegations set forth above.

39. The conduct of Defendants Dawn Properties, Inc., Southern Cross Construction Company, Inc., Ridgeland Construction One, LLC, The Beach Club, LLC, The Beach Club II, LLC, The Belmont of Lamar, LLC, Grand Biscayne Apts., LLC, and Seainn, LLC, ("the Design and Construction Defendants") described above violates 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).

40. The Design and Construction Defendants violated 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205(c), by failing to design and construct covered multifamily dwellings in such a manner that:

a. the public use and common use portions of the dwellings are readily accessible to and usable by persons with disabilities;

b. all doors designed to allow passage into and within the dwellings are sufficiently wide to allow passage by persons who use wheelchairs for mobility; and

c. all premises within such dwellings contain the following features of adaptive design:

i. an accessible route into and through the dwelling;

ii. light switches, electrical outlets, thermostats, and/or other environmental controls in accessible locations; and

iii. usable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space.

41. The Design and Construction Defendants, through the actions and conduct referred to in the preceding paragraph, have:

a. discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to buyers or renters because of a disability, in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a);

b. discriminated against persons in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with a dwelling, because of a disability, in violation of 42 U.S.C. § 3604(f)(2) and 24 C.F.R. § 100.202(b); and

  c. failed to design and construct dwellings in compliance with the accessibility and adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205.

42. The conduct of the Design and Construction Defendants described above constitutes:

  a. a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619; and/or

  b. a denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619, which denial raises an issue of general public importance.

43. Persons who may have been the victims of the Design and Construction Defendants' discriminatory housing practices are aggrieved persons under 42 U.S.C. § 3602(i), and may have suffered injuries as a result of the conduct described above.

44. The conduct of the Design and Construction Defendants described above was intentional, willful, and taken in disregard of the rights of others.

**<u>ADA Claims</u>**

45. The United States re-alleges and incorporates by reference the allegations set forth above.

46. The conduct of Defendants Dawn Properties, Inc., Southern Cross Construction Company, Inc, Ridgeland Construction One, LLC, The Beach Club, LLC, The Beach Club II, LLC, The Belmont of Lamar, LLC, and Grand Biscayne Apts., LLC, ("the ADA Defendants") described above constitutes:

> a. a pattern or practice of discrimination within the meaning of
>
>    42 U.S.C. § 12188(b)(1)(B)(I) and 28 C.F.R. § 36.503(a); or
>
> b. unlawful discrimination that raises an issue of general public
>
>    importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and
>
>    28 C.F.R. § 36.503(b).

47. The ADA Defendants violated Title III of the ADA by designing and constructing places of public accommodation, including the leasing offices in multifamily dwellings, without ensuring that these places of public accommodation were readily accessible to persons with disabilities to the maximum extent feasible. *See* 42 U.S.C. § 12183(a)(2).

48. Persons who may have been victims of the ADA Defendants' discriminatory conduct are aggrieved as defined in 42 U.S.C. § 12188(b)(2)(B), and may have suffered injuries as a result of the conduct described above.

49. The conduct of the ADA Defendants described above was intentional, willful, and taken in disregard of the rights of others.

### **Prayer for Relief**

WHEREFORE, the United States prays that the Court enter an order that:

> a. Declares that the conduct of the Design and Construction Defendants violates
>
>    the Fair Housing Act;
>
> b. Declares that the conduct of the ADA Defendants violates the ADA;
>
> c. Enjoins the Design and Construction Defendants, their officers, employees,
>
>    agents, successors, and all other persons in active concert or participation
>
>    with any of them from:

17

    i.  failing or refusing to bring the dwelling units and public and common-use areas at covered multifamily properties in which each defendant was or is involved in the design and/or construction into full compliance with the Fair Housing Act;

    ii.  failing or refusing to conduct Fair Housing Act compliance surveys to determine whether the retrofits ordered in paragraph (i) above or otherwise performed comply with the Fair Housing Act;

    iii.  designing or constructing any covered multifamily dwellings and public and common-use areas in the future that do not comply with the Fair Housing Act; and

    iv.  failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Design and Construction Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

d.  Enjoins the ADA Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

    i.  failing or refusing to bring the public accommodations, including leasing offices and other public-use areas, at covered multifamily properties in which each defendant was or is involved in the design and/or construction, into full compliance with the ADA and the ADA Standards;

18

    ii.   failing or refusing to conduct ADA compliance surveys to determine whether the retrofits ordered in paragraph (i) above or otherwise performed comply with ADA and the ADA Standards;

    iii.   designing or constructing any public accommodations in the future that do not comply with the ADA and the ADA Standards; and

    iv.   failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the ADA Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

e.   Enjoins Rule 19 Defendants Summer Miss, LLC, 14510 Lemoyne Boulevard, LLC, Lexington Mill Mississippi Owner, LLC, and Inn by the Sea Home Owners Association, Inc. from engaging in conduct that denies access to the public and common use areas, the covered multifamily dwellings, or the public accommodations areas at the properties described in paragraphs 4 through 8 under their ownership or management, and from engaging in any other action to impede any retrofits required to bring the properties, covered multifamily dwelling units, and public and common use areas into compliance with the Fair Housing Act and the public accommodations areas into compliance with the ADA and the ADA Standards in a prompt and efficient manner while minimizing inconvenience to the residents and visitors at the properties and to the Rule 19 Defendants;

f.  Awards monetary damages to all persons harmed by the discriminatory

    housing practices by the Design and Construction Defendants and the ADA

    Defendants pursuant to 42 U.S.C. § 3614(d)(1)(B) and

    42 U.S.C. § 12188(b)(2)(B), respectively;

g.  Assesses a civil penalty against each Design and Construction Defendant in

    an amount authorized by the Fair Housing Act pursuant to 42 U.S.C. §

    3614(d)(1)(C) to vindicate the public interest; and

h.  Assesses a civil penalty against each ADA Defendant in the amount

    authorized by the ADA pursuant to 42 U.S.C. § 12188(b)(2)(C) to vindicate

    the public interest.

//

//

//

//

//

//

//

//

//

//

//

//

The United States further prays for such additional relief as the interests of justice may require.

ERIC H. HOLDER, JR.
Attorney General

GREGORY K. DAVIS                           JOCELYN SAMUELS
United States Attorney                     Acting Assistant Attorney General
Southern District of Mississippi           Civil Rights Division

PSHON BARRETT                              STEVEN H. ROSENBAUM
MS Bar # 2071                              DC Bar # 417585
Assistant United States Attorney           Chief, Housing and Civil
Office of the United States Attorney        Enforcement Section
for the Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, MS 39201
601-973-2842                              MICHAEL S. MAURER
pshon.barrett@usdoj.gov                    DC Bar # 420908
                                           Deputy Chief
                                           JULIE J. ALLEN VA Bar # 41578
                                           MAZEN M. BASRAWI CA Bar # 235475
                                           Trial Attorneys
                                           United States Department of Justice
                                           Civil Rights Division
                                           Housing and Civil Enforcement Section
                                           950 Pennsylvania Avenue, N.W.
                                           Northwestern Building
                                           Washington, D.C. 20530
                                           202-307-6275
                                           202-514-1116 (fax)
                                           julie.allen@usdoj.gov
                                           mazen.basrawi@usdoj.gov

21

The United States further prays for such additional relief as the interests of justice may require.

ERIC H. HOLDER, JR.
Attorney General


GREGORY K. DAVIS
United States Attorney
Southern District of Mississippi

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division


PSHON BARRETT
MS Bar # 2071
Assistant United States Attorney
Office of the United States Attorney
for the Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, MS 39201
601-973-2842
pshon.barrett@usdoj.gov

STEVEN H. ROSENBAUM
DC Bar # 417585
Chief, Housing and Civil
Enforcement Section


MICHAEL S. MAURER
DC Bar # 420908
Deputy Chief
JULIE J. ALLEN VA Bar # 41578
MAZEN M. BASRAWI CA Bar # 235475
Trial Attorneys
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W.
Northwestern Building
Washington, D.C. 20530
202-307-6275
202-514-1116 (fax)
julie.allen@usdoj.gov
mazen.basrawi@usdoj.gov

21

The United States further prays for such additional relief as the interests of justice may require.

ERIC H. HOLDER, JR.
Attorney General

GREGORY K. DAVIS
United States Attorney
Southern District of Mississippi

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

PSHON BARRETT
MS Bar # 2071
Assistant United States Attorney
Office of the United States Attorney
for the Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, MS 39201
601-973-2842
pshon.barrett@usdoj.gov

STEVEN H. ROSENBAUM
DC Bar # 417585
Chief, Housing and Civil
Enforcement Section

MICHAEL S. MAURER
DC Bar # 420908
Deputy Chief
JULIE J. ALLEN VA Bar # 41578
MAZEN M. BASRAWI CA Bar # 235475
Trial Attorneys
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W.
Northwestern Building
Washington, D.C. 20530
202-307-6275
202-514-1116 (fax)
julie.allen@usdoj.gov
mazen.basrawi@usdoj.gov

21