IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CAUSE NO. 1:14CV224-LG-JCG |
| DAWN PROPERTIES, INC.; SOUTHERN CROSS CONSTRUCTION COMPANY, INC.; RIDGELAND CONSTRUCTION ONE, LLC; THE BEACH CLUB, LLC; THE BEACH CLUB II, LLC; THE BELMONT OF LAMAR, LLC; GRAND BISCAYNE APTS., LLC; SEAINN, LLC; IKE THRASH | DEFENDANTS |
| AND | |
| SUMMER MISS, LLC; 14510 LEMOYNE BOULEVARD, LLC; LEXINGTON MILL MISSISSIPPI OWNER, LLC; INN BY THE SEA HOME OWNERS ASSOCIATION, INC. | RULE 19 DEFENDANTS |
| LEMOYNE BOULEVARD, LLC | CROSSCLAIM PLAINTIFF |
| v. | |
| GRAND BISCAYNE APTS., LLC | CROSSCLAIM DEFENDANT |
| AND | |
| IKE THRASH | DEFENDANT TO CROSSCLAIM |

<u>ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT FILED BY LEXINGTON MILL MISSISSIPPI OWNER, LLC</u>

BEFORE THE COURT is the [529] Motion for Partial Summary Judgment filed by Rule 19 Defendant Lexington Mill Mississippi Owner, LLC.  The Motion has been fully briefed.  Having considered the Motion, the submissions of the

parties, and the relevant law, the Court is of the opinion that the Motion should be denied because genuine issues of material fact remain regarding potential retrofits at the Lexington.

## BACKGROUND

The United States filed this action against Defendants Dawn Properties, Inc.; Southern Cross Construction Company, Inc.; Ridgeland Construction One, LLC; The Beach Club, LLC; The Beach Club II, LLC; The Belmont of Lamar, LLC; Grand Biscayne Apts., LLC; and SeaInn, LLC (collectively, the "Design and Construction Defendants"). The Government claims that the Design and Construction Defendants were related entities that were the owners, developers, and builders of several local residential multifamily dwellings. The Government seeks to hold the Design and Construction Defendants liable for purported violations of the Fair Housing Act and the Americans with Disabilities Act.

Pursuant to Federal Rule of Civil Procedure 19, the Government also named as Defendants Summer Miss, LLC; 14510 Lemoyne Boulevard, LLC; Lexington Mill Mississippi Owner, LLC; and Inn by the Sea HOA. The Government alleges that these entities are the current owners of the residential complexes at issue, and, thus, are necessary parties in whose absence complete relief cannot be afforded to the United States.[1]

---

[1] Lemoyne also filed a Crossclaim against Grand Biscayne and Ike Thrash, and the Government amended its Complaint to include claims against Thrash. Those claims are not an issue in the Motion currently before the Court.

The current movant, the Lexington, acknowledges that there is no liability claim against it, and that it will not be financially responsible for any retrofits. Nevertheless, the Lexington argues that it "has a unique interest in ensuring that all proposed retrofitting is actually necessary and will not unduly impair the continuing operations and value of its property." (The Lexington Mot. 1, ECF No. 529).

The Lexington contends, based on its expert's testimony, that it should not have to retrofit "50 of the 108 ground floor units at the complex" (*see id*. at 2) due to impracticality on account of its location "on property with significant, heavy sloping through the site." (*See* The Lexington Mem. 5, ECF No. 530). It requests judgment as a matter of law that, should liability against the Design and Construction Defendants be established, the Court should only require that 58 units be retrofitted with respect to identified accessibility issues.

## DISCUSSION

The parties dispute whether the impracticality defense is even available to the Lexington.[2] The Court need not resolve this issue at this stage, because even assuming that the defense applies, there are genuine issues of material fact with respect to the number of units, if any, that are subject to the defense. In essence, the Lexington is asking this Court to rule as a matter of law that its expert's

---

[2] This defense is based on 24 C.F.R. § 100.205(a), which states in pertinent part that "[c]overed multifamily dwellings . . . shall be designed and constructed to have at least one building entrance on an accessible route unless it is impractical to do so because of the terrain or unusual characteristics of the site."

3

analysis is correct, to the exclusion of two other experts.[3] For the reasons discussed more fully below the Court declines the request.

The Lexington's expert, Mark Wales, conducted a site visit to the complex and first opined that it would be practical to retrofit 24 of 108 units.[4] (*See* Wales Rep. 11-12, ECF No. 529-2). In contrast, in his report, the Defendants' expert, Larry Fleming, proposed that it would reasonable to retrofit 68 of the units. (*See* Fleming Rep., at Lexington Repair List, ECF No. 529-15). Additionally, the Government's expert, Gina Hilberry, submitted a rebuttal to Wales' Report, including the following:

> . . . As an initial matter, Mr. Fleming . . . has already identified 68 units that can be retrofitted to provide accessible entries on accessible routes . . . . In addition, for purposes of responding to Mr. Wales, I have identified at least 18 more units where accessible routes . . . can be provided within a reasonable distance. This suggests that at least 86 of the units can have an accessible entry on an accessible route through the remediation process.

(Hilberry Rebuttal to Wales 15, ECF No. 529-17).

Wales then testified "that in light of Ms. Hilberry's rebuttal report and also in light of [another] site visit" he conducted as a result of that report, his opinion had changed. (*See* Wales dep. 77:17-25, 79:13-20). He testified that "[t]he number

---

[3] The parties do not dispute the qualifications of each expert.

[4] The report identifies the following twelve "units": 1B, 2B, 3B, 4B, 5B, 6A, 11B, 13A, 13B, 14B, 16A, and 16B. The parties appear to use the term "units" and "apartments" interchangeably, as there two apartments associated with each "unit," thus resulting in Wales' original assessment that it was only practical to retrofit 24 of 108 units.

of units that I found to be practical and reasonable I believe it was 24 in my first report, it's now 58. So that's a big difference. But yes, it changed." (*See id.* at 80:1-5; *see also id.* at 118:4-18, 169:14-170:4; Wales notes, ECF No. 529-18).

Thus, three qualified experts have presented conflicting testimony as to the number of units that it would be impractical to retrofit at the Lexington. (*See also* Wales' Proposed Accessible Routes, ECF No. 529-19) (illustrating each expert's conflicting opinions with respect to accessible units at the Lexington). The Lexington claims that Hilberry's "hollow, unsupported identification of 86 potentially accessible units is unworthy of credence[,]" speculative, and mere *ipse dixit*.[5] (*See* The Lexington Mem. 16-17, ECF No. 530). In particular, it claims that Hilberry "did not address how sloping, ramp lengths and sizes, spacing, building systems integrity, drainage or any other issue could be overcome to provide an accessible route to any single apartment." (*See id.* at 16). It takes issue with her failure to "provide a repair proposal for the complex." (*See id.* at 2). It points, instead, to Wales' "detailed unit-by-unit explanation of the significant obstacles to constructing new accessible routes." (*See id.*).

"In considering a [summary judgment] motion opposed by expert testimony, the trial court has broad discretion to rule on the admissibility of the expert's evidence and its ruling [will] be sustained unless manifestly erroneous."

---

[5] The Lexington does little to address the conflicting testimony offered by Fleming. Regardless, as discussed herein, the Court finds that genuine issues of material fact remain – at the very least – with respect to the opinions offered by Wales and Hilberry that preclude summary judgment.

5

*Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1123 (5th Cir. 1988).

Pursuant to Federal Rule of Evidence 702, an expert witness

> may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Under the standard for admission of expert witness testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589.

"'District courts enjoy wide latitude in determining the admissibility of expert testimony . . . .'" *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (citation omitted). In doing so, the Court "should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: 'Vigorous cross-examination, presentation of contrary evidence, and careful

6

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* at 1078 (quoting *Daubert*, 509 U.S. at 596). "Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder." *Octave v. Beau Rivage Resorts, Inc.*, No. 1:09cv753-LG-RHW, 2011 WL 1099866, at *1 (S.D. Miss. Mar. 22, 2011) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

The Court has reviewed Hilberry's expert reports and her testimony, as well as Fleming's expert report, and cannot say that such testimony is so fundamentally unsupported that it cannot possibly help the factfinder. In reaching this conclusion, the Court emphasizes that its role "in exercising its gate-keeping function is [not] to determine whether the expert is correct but rather whether his opinions are reliable . . . ." *See Willis v. Kia Motors Corp.*, No. 2:07cv062-PA, 2009 WL 1974586, at *4 (N.D. Miss. July 8, 2009). The Court is of the opinion that the Lexington's contention that Hilberry's analysis of the property at issue was less detailed than Wales' analysis goes to the weight of Hilberry's testimony and not its admissibility, and that any alleged deficiencies in Hilberry's (and/or Fleming's) opinions are more properly addressed through the adversary system, not on summary judgment. *See 14.38 Acres of Land*, 80 F.3d at 1077-78; *see also Willis*, 2009 WL 1974586, at *4 ("The defendants' arguments . . . go to the weight rather than admissibility and they are free to cross-examine [the expert] during trial on the perceived inadequacies of his . . . opinion."). Having thus determined that the expert

7

testimony at issue is admissible, the Court finds that the admittedly conflicting testimony precludes summary judgment on the issue of retrofits at the Lexington. *See, e.g.*, *Martin v. Homesite Grp., Inc.*, No. 3:06cv536-DPJ-JCS, 2008 WL 4000182, at *2 (S.D. Miss. Aug. 20, 2008); *Lascola v. Schindler Elevator Corp.*, No. 08-4802, 2010 WL 971792, at *3 (E.D. La. Mar. 12, 2010) ("The credibility and weight assigned to each expert's testimony is a function of the jury and may not be completed at this time during the summary judgment process."); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [529] Motion for Partial Summary Judgment filed by Rule 19 Defendant Lexington Mill Mississippi Owner, LLC is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 12th day of October, 2016.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE